The last case today is 23-1359 Great Lakes Insurance SE v. Martin Andersson. Will attorney for the appellant please come up to the podium and introduce yourself for the record. Good morning, your honors, my name is Michael Goldman, I represent Great Lakes Insurance SE, the appellant. May I reserve two minutes, please? Yes, you may, and you may proceed. Thank you, your honor. May it please the court, the district court made two very clear errors. First, the district court held that as a matter of law, the only way that a vessel could be unseaworthy was if there was some physical infirmity in the hull. There is no case so holding, in fact, there is a mountain of case law universally holding exactly the opposite, including this court's binding decision in LaBarca, that's underwriters of Lloyds v. LaBarca. Second, for reasons that weren't explained or addressed, and I don't even think argued by Mr. Andersson below, the district court simply ignored and did not apply the insurance policy's own express definition of seaworthiness, which includes not just the physical integrity of the hull, but also all of the hull, excuse me, all of the vessels, parts, equipment, the pertinences, everything necessary to operating the vessel. Counsel, can I ask you, so are you, I thought you were relying on the express language in the policy about seaworthiness, but then I wasn't sure when I read your reply brief, are you relying on both the implied and the express? Yes, there's no reason to look to the express because the entrenched federal rule on the slightly different words, but effectively say exactly the same thing, Your Honor. Just I want to emphasize, this is vital to this insurer, that's why, just so that there is no mistake, the language was expressly included. Also, there can be sometimes confusion about what applies under federal admiralty law, so again, just to be safe, the policy also includes an express definition. Let me ask you, Counsel, when you talk about seaworthiness, you just gave us examples, you're also relying on having charts, correct? Yes, that is correct. There is a case law which cited a lot of it in our brief. I don't think it's a debatable point that there are numerous cases which have held in lots of different circumstances, applying federal admiralty law, that a vessel which doesn't have adequate charts is unseaworthy. Okay, now there's an issue in some of the cases that say the charts have to be for the route that's going to be taken, and in this case, the vessel, due to the maritime conditions, had to take another route, and that's where it got grounded. You still argue that that's unseaworthy for not having that route? Not for that route, no, Your Honor. We're arguing that at the inception of the insurance policy, that's long before this vessel ever departed for, it wasn't an independent company, it was for Rube, I believe, but long before this vessel departed, it never had these charts. It didn't have all the necessary... Not even for Aruba, for anywhere else? It only had paper charts, which we conceded were current for Aruba, Bonaire, and Curacao, and for some of the Leeward and Windward Islands. That leaves out much of the northern Caribbean, the Bahamas, Florida, lots of other places that the vessel was allowed to navigate at the inception. But do you have any case that says that at inception, the vessel has to have charts for every place that it could possibly go for the length of the term of the policy? Is there any case that says that? No. The only cases say that vessels must be seaworthy at the inception, and that includes all the pertinences, equipment, gear, everything necessary for the vessel. And since charts have been held uniformly to be such gear, this vessel was unseaworthy because it didn't have them. Could I elaborate also in answer to your question, Your Honor? Yes, please go ahead. Because not only was it inadequate in paper charts, it's undisputed that the vessel's electronic charts were several years out of date. I was going to ask a question about, nowadays, technically, electronic charts, probably just press a button, you can travel to the seven seas. Exactly right, Your Honor. So would you be saying that nowadays, probably almost any vessel should have electronic charts to navigate anywhere in the world? I wouldn't say that it would necessarily be required. So for instance, if this vessel had had updated paper charts for everywhere that it was intended to be navigated at the inception, we wouldn't be contending that it was unseaworthy because of lack of electronic charts. So either would have satisfied, but on these facts, neither one satisfies the standard of seaworthiness, Your Honor. Counsel, may I take you back to Judge Rickleman's line of questions, or what I think was her line of questions was, so do you have to have the life jackets and sufficient life-saving apparatus for the entire term, for the places that it might sail to, the number of crew that you would have at the inception? At the inception. That can vary after the inception, because a different seaworthiness warranty applies during the life of the policy. During the life of the policy, the vessel has to be seaworthy, but the insurer's own intention for operating the vessel at that point can control what controls at the inception is the mutual intent of the parties, Your Honor. So what if there's, in the minds of both the parties, or at least the insurer, that they're on board, and then later on, they decide to take on two more, but they didn't, when they got the policy, have enough life vests for those two more people. Does this provision apply to negate coverage? It would only apply if the resulting loss was causally related to the unseaworthiness, and if the insured was somehow at fault or negligent for the loss. Neither of those doctrines, neither of those issues, apply with respect to the seaworthiness warranty that applies at the inception, Your Honor. So if something had happened subsequent to inception, where the vessel had undertaken some different intended service, additional crew or fewer crew or a different destination, then a varying standard of seaworthiness applies. That's the second implied warranty, and we're not here on that one today, Your Honor. On this express and implied, if the express terms of the provision were materially inconsistent with the implied, I know you're saying they're consistent, but which one would you want us to be applying? Wouldn't we be applying the express terms if they were materially inconsistent? If they were materially inconsistent, yes, the parties can. So why would you say we shouldn't start with the express? The only reason I say not to start with the express is because, as we contend, there's no difference at all. What makes a vessel seaworthy is exactly the same under both. It's the same under the implied warranty, for which there is case law going back to the early 19th century requiring a vessel to be seaworthy in all of its appurtenances, and it's the same under the express terms. The express terms merely repeat, and I bring that up, Your Honor, because to backtrack just a little bit of history, since 1955 and the Supreme Court's Wilbur and Bode decision, there is sometimes confusion about what law applies. So just to fill any gaps, just to make sure that when we're in litigation, no one challenges whether or not the seaworthiness warranties are entrenched, we include this extra language. Just in case, Your Honor. Counsel, I just want to go back to what I asked you about before, because I just want to make sure I'm very clear on this. The district court said in its decision that there are no cases in which the court held that a lack of up-to-date maps voids an insurance policy from its inception under the first warranty. That's correct. It hasn't come up. I'm sorry. Excuse me, Your Honor. I was just going to say, do you disagree with that? I don't disagree with that. There's no insurance case. What there is is this. There are all the cases since the early 19th century saying that a vessel, in general, must have charts to be seaworthy. And there is this court's case, La Barca from 2001, that held that the same seaworthiness standard from all those other cases, that standard has to do with Jones Act claims, limitation of liability, collision cases, all the other sorts of admiralty claims where seaworthiness is relevant. This court in La Barca, which was a marine insurance case, held that that same seaworthiness standard applies to a marine insurance policy, if I may. But are those cases about inception or about specific journeys that the vessel is under? In none of those cases, judging what makes a vessel seaworthy. Since there were none applying that other case law to a marine insurance policy, nothing ever has said one way or the other that there is some different, either lesser or greater seaworthiness standard at the inception of the policy. Which I would also like to comment on, Your Honor. If it is the case that there is some lower standard of seaworthiness applicable at the Because if federal admiralty law doesn't require it, then the contract expressly requires it. The contract says, your vessel must be seaworthy, and being seaworthy involves, it requires, not just, it specifically says, so that there's no mistake, not just the physical integrity of the hull, but all of the vessel's equipment, gear, appurtenances, et cetera. And again, you're saying that the vessel has to have, just like Judge Howard was asking, has to have gear, maps, everything for every possible journey that it could potentially take with any possible number of people over the course of a year. It has to have the adequate gear for the intended use that the parties mutually agreed upon. So in this particular case, that means navigation, not just in the ABC islands and the lesser and the greater Antilles. It means the Dominican Republic, Florida, and the Bahamas. Because this policy, I was going to go into facts. May I go into a little bit of the facts that support this? In order to obtain this policy, Mr. Anderson submitted a request for a quote. And that quote, excuse me, a request for a quote is a request that the insurance company tell the applicant what terms they might be willing to offer for insurance. And that request said, forgive me, I'm parched, Florida, Bahamas, Caribbean. Then to supplement it, a fully executed application on Great Lakes' form was submitted. And again, it said Florida, the Bahamas, Caribbean. And then in reliance on the federal admiralty law duty to truthfully disclose material facts, the underwriter then issued a policy that said Florida, Bahamas, Caribbean. So the mutual intent of the parties... And here, this is an emergency situation, and it ended up in the Dominican Republic. Is that, the test for seaworthiness, even in an emergency situation in the Caribbean where the Dominican Republic is, would still be the same result? The standard would still be the same. No, it would not be the same result because in this case, the reason we haven't appealed on the basis of the second warranty is because, I'll concede, I don't think there's the evidence to show fault and causation. We are conceding for purposes of the appeal. He's blown off course. He didn't intend to go someplace. And that he was not negligent for not having charts with places he didn't intend to go. It's just that at the inception, when we agreed to issue a policy that said Florida, Bahamas, Caribbean, that's when his vessel was not seaworthy. He wasn't prepared. He had not met the policy standards. So if I change the facts a little bit, let's assume there's one of these mega hurricanes that hits Puerto Rico, goes to the Dominican Republic, and he's stuck there, and he said, the only way, let me head to Panama Canal through Cologne in the Atlantic, and maybe come out in the Pacific. And if this had happened at the entrance of the canal or something, that would be covered by the policy? Yes. Oh, no, excuse me. No, the federal amnesty law is very clear that the seaworthiness warranty isn't strictly applied to address issues of exigency. And in this case, Your Honor, again, for purposes of the appeal, we're not disputing. He was blown on a more northerly course, and that he would dispute whether or not this was necessary. But for purposes of the appeal, we don't. His crewman was incapacitated by seasickness, and he contends he steered a more northerly course in order to ease the ride and get him medical care. And admiralty law is very solicitous of seamen. So the duty of seaworthiness that applies during the policy, we're not disputing that exigency would have excused, does excuse, breach in that case. So he didn't intend to go to Dominican Republic, but he was forced to, so he didn't breach the warranty during the policy. Is there anything else I can answer, Your Honors? So, again, when you're saying he didn't breach it during the policy, you're saying he breached it at the inception of the policy. That's right. He wasn't adequately prepared for all the risks that we agreed to ensure.  And he contends that in his mind, he never intended to navigate to all those different places, but that's never what he manifested to us. And I would urge you to remember what we all learned as 1Ls, that you interpret a contract and what it means based on the manifested intent of the parties. No party ever gets to say, I had this secret private intent which should control the interpretation of the contract. Every manifestation to us was Caribbean, Florida, Bahamas, and therefore we issued a policy, Florida, Caribbean, Bahamas. Counsel, I don't mean to be facetious. I'm just trying to make sure I understand as much as I can. Be as facetious as you like. Not a sailor. Not a sailor. Fuel, adequate fuel, does that go into the calculus for seaworthiness? I couldn't answer how it would affect on the day of the inception because I... Well, that's exactly what I'm getting at. That's simply a factual scenario I couldn't consider only because on the day of the inception of the policy, the vessel could be anywhere. It might be sitting in dry dock. It might be on a boat lift. It might be on a trailer getting ready to be put in the water. So no, I don't think at the inception, fuel... You certainly wouldn't need enough fuel to go to every possible... No, I wouldn't. Okay. I'll concede that. So what distinguishes that from sea charts for places that you might not ever go to? Because as... Updated sea charts. Because he was absolutely allowed to go there. And we only insured him on the condition that he was prepared for everywhere that he was going to go. In this case, the very breakwater on which he ran aground was not on the chart, was not on any of the charts that he had because they were out of date. So that puts us in the position of covering a risk that we never intended. It expands the scope of his coverage beyond what was mutually intended by the parties. It puts us in the position of insuring his failure to properly equip his boat, which is not something that marine insurance covers. Marine insurance is different from things like health insurance. In recognition of the unique perils of the environment, it has always been the case with marine insurance, going back to the beginning of the Republic, that these sorts of requirements are imposed to make insureds keep their vessels properly equipped, keep them safe. So I'll have your honor. Counselor, let me ask you a question. And again, because seaworthiness, it's an international concept. It's not only the United States. It's maritime insurance. It's very common in other countries. Do you have any analogous cases from any non-U.S. jurisdictions that have resolved the similar issue just as? No. Forgive me, your honor. I did not look to any other foreign courts which have considered seaworthiness. Because I do know in some maritime cases, particularly Second Circuit, sometimes they look to those as an analogy. There's been some diversions, actually. Traditionally, there has been a strong convergence between American and British law. Exactly. That's where I was going. The court decisions specifically say, look to British law to inform. There's been some departure on some issues. Not seaworthiness, but some issues. So there isn't this kind of uniformity anymore. But I did not look to other countries' cases on seaworthiness. Thank you. Thank you very much, your honor. Ms. Neymar. No matter what law is applied, whether the focus is on the policy language, or federal admiralty law, or any state's law, the case comes down to reasonableness. And when this court applies common sense and reasonableness, the trial court's ruling must be affirmed. Great Lakes is asking this court to create law where none exists. It's asking you to require that all charts for all areas covered by a policy be on the boat on the date of the policy's inception, or the boat is unseaworthy. Now, in this case, the boat was insured for an area of Florida, the Bahamas, and the islands, the Caribbean. In other cases, we have ships that have worldwide coverage. Should they be required to carry a chart, an updated chart, on the day of inception for every single location? Of course not. It doesn't make sense on a lot of levels. Another way it doesn't make sense is it's completely rational to expect that a vessel taking off on a voyage would be required to have updated charts for the intended voyage. And you've seen in the briefing that there's substantial documentation of case law that says that. That's what we refer to as the second warranty of seaworthiness. The part that has to do with the voyage at issue. If we were to say every boat had to have all the charts on the day of inception, that doesn't assure that if a ship sank in the harbor, that the chart that was, let's say the boat was insured on January 1st, a ship sank in the harbor on May 1st, and someone went to that harbor in July. If they didn't have an up-to-date chart, they could hit that submerged vessel without knowing about it. Completely ruining the whole concept of being seaworthy because you have the correct charts on board. It's meaningless. It could be worthless. And you'll see in a lot of the cases that were cited, there were very minute changes that were parts of notices to mariners where the courts held your vessel wasn't seaworthy because you weren't aware of this construction project on the Ohio River, for instance. Or you weren't aware of a particular thing that had blown during a storm and there was a notice to mariners and your charts weren't updated. Therefore, your vessel was unseaworthy. This argument about inception is something that my opposing counsel came up with for summary judgment. And I'd like to bring up LABARCA, which has been raised significantly in my opposing counsel's briefing, is different from our case in that the policyholder in that case had the burden of overcoming a presumption of unseaworthiness because the vessel sank at the dock in calm waters. So the entire approach of the court was a little different. That boat was presumed to be unseaworthy unless the insured could prove it was seaworthy. It also had nothing to do with charts. The insured in that case had assisted a worker on his boat in removing his air conditioning units. Two of the four air conditioning units were removed and the hoses were left unstopped. And then the air conditioners were being used. So water was being poured into the boat and then the person left and left the boat to sink overnight, leaving it in a completely unseaworthy condition. There's nothing in that case that says it's about the absolute warranty of seaworthiness. It was about that day on that occasion where the owner was aware because he was part of that construction that was going on. There was also, by the way, an exclusion in that case as far as the renovations or repairs to the vessel were not covered. And that's what they were doing. Counsel, can I ask you, because I think your opposing counsel agrees that he doesn't have a case that's directly on point. Yes. So if we really just look at the language of the policy, instead I'm looking at the definition of seaworthy in the policy. And I think what opposing counsel is relying on is that seaworthiness is not just about the hull, but it's also about equipment and gear. So why are charts not equipment under the plain language of the policy? Okay, I'd like to get to that. And I also, just as we're at the policy, like to point out there was a question, I believe it was by Judge Galppi, about whether the policy, if the policy differed from the Admiralty Law, would the policy prevail? And I believe the policy would prevail here. And the policy does differ from Admiralty Law. One way it differs from Admiralty Law is that it doesn't contain a time component, and it doesn't have anything that says that it has to be seaworthy for all purposes and uses, et cetera, on the date of inception. It doesn't mention anything related to that. Well, it says that it warrants that it's seaworthy at all times. Right, and the way I read that is that it needs to be seaworthy for whatever it's being used for on that particular day or that particular time at all times. So if you're going out in the ocean in December off Massachusetts, and your crew members are in flip-flops and shorts, and somebody gets frostbitten, for instance, that vessel's unseaworthy. The crew is not adequately prepared for the weather. If, however, that same crew was on a boat in Florida in July, that crew member would obviously be dressed appropriately for the occasion. This can go for a lot of things. The vessel in this case, delivery was taken on the date of inception at a boatyard. We don't know anything about the date of inception. And this is something I want to point out because it was raised in the briefs that my client's boat allegedly had no charts on board on the date of inception, that the charts were, the electronic charts were allegedly inadequate. There's no evidence whatsoever about the date of inception because no one was considering the date of inception. All of the issue that was considered by the parties in this case had to do with what happened on the day of the loss or when the vessel was leaving. There was nothing in discovery. There was nothing anywhere along the course of this. There was nothing in the reservation of rights letter or in the complaint that talked about the date of inception. Now, as far as the policy... And there's nothing in the record that evidences one way or another as to the date of inception? No, nothing. There was not one question in a deposition. There was not one item in an affidavit. Because it was not something that was... Or interrogatory or anything else? What's that? Interrogatories or answers? Nothing. Nothing, Your Honor. So, in the general... Can I just ask you one question about the policy language? I'm probably way off base here. I thought the term warranty meant it's an assertion of fact that existed at that time. And if you're talking about future commitments, it would be a covenant. Do you know anything about these distinctions? Okay, yes. And because part of my argument has to do with the structure of the policy, let's go there now. Policies have coverage provisions and exclusions. And they have conditions and warranties. Conditions and warranties are provisions whereby the behavior of the insured, typically, can act to forfeit coverage, which otherwise would exist. In this case, if a warranty were to be violated, whether it was the warranty of seaworthiness or the warranty of navigability that were alleged in this case, and the court were to find that that happened, then the policyholder's coverage would be void from the date of inception of the policy. They would have waived their coverage. So, yes, that's what that warranty is. Is it an assertion of truth? It's not the same as a policy application question, for instance, which is subject to Uber on my fee day. It more has to do with the condition of the vessel in fact at the time when you're considering those facts. Counsel, can I just follow up? Because I'm also not a maritime insurance expert. Is what you're saying that if it's found that the vessel was not seaworthy for a particular voyage that it was taking, and therefore it wasn't seaworthy at all times, that that would void the policy from its inception because of failure to be seaworthy for one voyage? If there were a finding that the vessel was unseaworthy at any time, according to this warranty, and you'll note that in my brief, I point out that taken to its extreme, this warranty literally creates illusory coverage. Every vessel that sinks, for instance, every vessel that catches on fire, every vessel that goes aground, ultimately at some point becomes unseaworthy by nature of the damages that are caused to it. So, you know, if you take it to its extreme, there is no coverage ever for anyone. However... Not even taking it to the extreme, just more specifically, and I understand this appeal is not about the second implied warranty, but if it were found that your client had taken that particular voyage and it wasn't seaworthy for that particular voyage, under this policy, him breaching the warranty would have meant it was voided from inception. Is that correct? Arguably, yes. Yes. I'll give you... Let's use the Panama example. Let's say there was no hurricane. There was no emergency. My client decided to go to Panama just because he felt like it. It was a cool idea. It is a cool idea. It is a cool idea. So he went to Panama and the insurance company found out that he went to Panama and there's a navigational warranty that says you're not allowed to go anywhere other than certain places. Arguably, they could void his policy from the inception because he violated the warranty. Now, you asked about whether the policy's language covers charts. And my reading of it is that, no, it does not cover charts. And the reason for that is that there's this language, there's a definition which was... It's a definition of scheduled vessel. The definition of scheduled vessel refers to... I'm going to paraphrase here. The vessel, obviously, equipment, sales, mass, spars, rigging, and all other equipment normally required for the operation and maintenance of the vessel and situate on the scheduled vessel, which would normally be sold with the vessel. There's no evidence that charts would normally be sold with the vessel. The other part of it is that if you go to the K, the definition of seaworthy, it says it means fit for the scheduled vessel's intended purpose. Seaworthiness applies not only to the physical condition of the hull, but to all its parts, equipment, and gear, and includes the responsibility of assigning an adequate crew. For the scheduled vessel to be seaworthy, it and its crew must be reasonably proper and suitable for its intended use. Note the difference between the word purpose at the top and use at the bottom. Now, my interpretation of that is that the intended purpose of this vessel is to be a sailing yacht. It needs to be able to float, it needs to be able to have sails that work, and a tiller that works, and et cetera. The intended use could be different any given day. The intended use could be to have a cocktail party at the dock one night at the yacht club. On another day, it could be to race. On another day, it could be to travel the intercoastal. And any of those different uses would require different kinds of equipment, et cetera. There's nothing here saying you have to have all of that on the first day of the policy. There's nothing saying that. And for it to be seaworthy, it needs to be seaworthy at whatever time we're talking about, which is relevant. But why can't either intended purpose, and I'm looking at the provisions in the policy, so I understand what you're citing too, but I think what opposing counsel is arguing is that intended purpose or intended use should cover all the places that are specified in the policy that the vessel may travel to. Why is that an unreasonable reading? Because you said this is all about reasonableness. Right. I think it's an unreasonable reading because there's nothing in the policy requiring the policyholder to go to those places at any particular time. But why is it not an intended purpose or an intended use that that's where they're going to go? Even if it's not a requirement. Well, like I said, I see use and purpose as slightly different. And I think the intended purpose, for instance, going to the meat of this case, the intended purpose is to be a sailing yacht. Let's say a sailing yacht that's a Caribbean cruiser that might go to the Bahamas or Florida too. But what should we... I understand that's how you understand the words. What should we look to to understand the phrase intended purpose? Is there case law? I assume it's not defined in the policy. Otherwise, you wouldn't be making that argument. There are a handful of cases out there that refer to the intended purpose of a yacht as being a yacht. And they talk about physical characteristics. And there are cases about cargo ships, about the intended purpose of carrying cargo. And they talk about the purpose of what that boat does. It doesn't go to charts except on a... None of those cases go to charts except on a voyage level. And what about the intended use language? Are there cases that have interpreted that kind of language in these types of policies? I didn't find cases that distinguished the two. But I do find it interesting that this... Keep in mind, it's about this policy. And this policy uses two different words. In my understanding, use is a more narrow term. Intended use is a slightly more narrow term than intended purpose. Okay. Just one quick question. Same question I ask opposing counsel. Are you aware of any cases from a non... Any non-U.S. jurisdiction that are in point or no? Your Honor, on that question that you asked my opposing counsel, there was an aspect that he did... He kind of skirted. And I do want you to be aware of that. The American rule with regard to seaworthiness includes this absolute warranty of seaworthiness on the date of inception of a term insurance policy. England has rejected that. Which presumably would mean that a lot of the countries that follow England also would have rejected that. I don't know of any specific case, but there is a case last cited in the briefing that does point out that England has rejected that. Okay. Thank you. Can I address one issue related to the GPSs? Okay. One minute. Judge Galppi, I noticed that you were asking about that. So I wanted to make sure that that was clear. There is no evidence. In fact, there's evidence of a material, factual issue on the GPSs. We have a Garmin GPS that was destroyed by the salvers. It was not retained. And therefore, there is no evidence about whether there were updates to that Garmin or what information was on it other than the chart chip. With regard to the Raymarine, had it had a chart chip in it, it would have had an avionics charts which would have shown this breakwater. At the time after when we were able to get the Raymarine, it came with no chart chip in it. But there was a handwritten note by a man named Andrew Ball, and it's attached to my addendum. In that handwritten note, he notes electronics charts provided. In his deposition, he says that he saw the Raymarine and that it was the only GPS he was aware of on the vessel. The clear implication is that he may have taken that chart chip, but we don't know that. And there's no evidence, there's no way that Great Lakes can prove that that Raymarine did not have a chart chip that would have contained the proper chart for this harbor. Okay. Thank you, Counsel. Thank you. Okay. Two minutes rebuttal. Thank you, Your Honor. I'd like to address Mr. Thiemeier's last point first. There is no factual dispute about what the GPS has had because Mr. Anderson testified at his deposition, confirming what he told our adjuster after the loss, that neither GPS device, the Garmin or the Raymarine, showed the breakwater on which the vessel ran aground. And it is undisputed that the breakwater was on all current charts. So whatever may have been on the Raymarine, what is undisputed is what was not. It could not possibly have been updated because Mr. Anderson testified undisputed that the breakwater, which was on all current charts, wasn't on either device, the Garmin GPS or the Raymarine GPS. I'll just address a few more of Ms. Thiemeier's arguments. Yes, a warranty is a promissory condition and it is subject to the rule, the very strict rule of strict or literal compliance. It's even more strict than the duty of utmost good faith under federal admiralty law. Under federal admiralty law, truthful disclosures by the insured only pertain to material facts. But insurance companies demand compliance with express and implied warranties strictly because the conditions they impose are so absolutely vital to the decision they make to accept the risk and the terms on which to cover it. Third, I'll say this. This is not an unreasonable or onerous requirement. Running a software update is something that we've all been doing since we got our first iPhones. You connect to the wireless network and you hit the update button. This didn't require him to go out to the United States Geologic Survey and get them to provide him with charts. You go to the nearest nautical supply company down in South Florida and you can get the most modern updated charts. This is the simplest requirement in the world to comply with. Thank you, your honors. Thank you. Okay, thank you very much, counsel. And the court is adjourned. All rise. The court is now recessed until the next session in December. Thank you.